Beulah I. MALOY *v.* STUTTGART MEMORIAL HOSPITAL

CA 92-582                                          852 S.W.2d 819

Court of Appeals of Arkansas
En Banc
Opinion delivered May 12, 1993

*Robert Dittrich*, for appellant.

*Bynum & Kizer*, by: *F. Wilson Bynum, Jr., Maxie G. Kizer*, and *Keith B. Hall*, for appellee.

JOHN E. JENNINGS, Chief Judge. Stuttgart Memorial Hospital obtained a judgment against Mrs. Beulah Maloy for $7,700.00. On September 16, 1991, the hospital served a writ of garnishment on Farmers and Merchants Bank of Stuttgart, seeking to garnish two certificates of deposit totaling $8,600.00 held jointly by Mrs. Maloy and her mother, India Ola Glover. Mrs. Maloy filed a motion to quash the writ, alleging that the money represented by the certificates belonged solely to her mother. The court held a hearing on the motion.

Mrs. Glover testified that she was the mother of three children, Beulah Maloy, Bill Glover, and Leola Jolly. She said that she sold various items of personal property after her husband died in 1978. On the advice of a banker she put the money in certificates of deposit. She said she "tried to divide it evenly into the kids' names so if I went into a nursing home it would be the kids." Mrs. Glover testified that none of her children had ever taken any money from the certificates of deposit.

On cross-examination she stated that she had put her

18

children's names on the certificates "to keep the money away from other people, if I go to a nursing home or something like that, because I had always heard that they can take your home or whatever money you have and I didn't want that to happen." She testified that she knew the children "could get [the money] right now if they want to," but that she trusted them not to do so.

Mrs. Glover's son, Billy, testified that Mrs. Glover had never told him the money was his and that he never considered the money to belong to anyone other than her.

Mrs. Maloy testified that the money represented by the certificates was her mother's and that she had never "exercised or evidenced any ownership or control" of the money during the past thirteen years.

On this evidence the trial judge, without comment, denied the motion to quash the writ of garnishment. The sole argument on appeal is that this was error. We find no error and affirm.

■■ The leading case in this state on the garnishment of joint bank accounts is *Hayden* v. *Gardner*, 238 Ark. 351, 381 S.W.2d 752 (1964). In *Hayden* the supreme court adopted the view "that the joint account should be garnishable only in proportion to the debtor's ownership of the funds, as to which parol evidence is admissible to show the respective contributions of each depositor, as well as any intent of one to make a gift to the other." The court held that "all of the joint bank account was prima facie subject to garnishment, and that the burden was on each joint depositor to show what portion of the funds he or she actually owned."

■■ It is true that certificates of deposit are subject to the same rules as other personal property when the question is whether a valid inter vivos gift has been made. *Irvin* v. *Jones*, 310 Ark. 114, 832 S.W.2d 827 (1992). When the question is whether a gift has been made, the donee has the burden of proving by clear and convincing evidence all of the elements of an inter vivos gift, including actual delivery. *See Irvin, supra*; *Wright* v. *Union National Bank*, 307 Ark. 301, 819 S.W.2d 698 (1991); *Phipps* v. *Wilson*, 251 Ark. 377, 472 S.W.2d 929 (1971). But these are cases where the alleged donee is seeking to establish a gift.

■ In the case at bar the hospital was not required to prove

an inter vivos gift from Mrs. Glover to Mrs. Maloy. It was not necessary to do so in view of the holding in *Hayden* v. *Gardner* that the joint account was prima facie subject to garnishment; i.e., there is a presumption that the money is owned by the judgment debtor. The hospital was not obliged to prove actual delivery, nor any other element of an inter vivos gift. Instead, the burden was on the joint account holders to persuade the court that Mrs. Maloy did not own the money represented by the certificate of deposit. *Hayden, supra.*

In the case at bar all of the witnesses who testified had an interest in the outcome of the litigation — Mrs. Maloy and Mrs. Glover were parties. The trier of fact is not required to accept the testimony of an interested witness. *See Jones* v. *State*, 308 Ark. 555, 826 S.W.2d 233 (1992). The trial court may also accept portions of the witnesses' testimony and reject other portions. *White* v. *State*, 39 Ark. App. 52, 837 S.W.2d 479 (1992). Mrs. Glover's testimony that she intended to put the money beyond the reach of her own creditors supports the trial judge's decision. On the evidence presented we cannot say the trial court's decision was clearly erroneous.

Affirmed.

MAYFIELD, COOPER, and ROGERS, JJ., dissent.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring. I fully concur with the prevailing opinion because it is consistent with case precedent which we are obliged to follow.

While it would have been well if the trial court had found the facts specially and stated separately its conclusions of law on which it held that the two certificates of deposit were subject to garnishment, it was not required to do so in the absence of a request pursuant to Ark. R. Civ. P. 52(a). We must presume, therefore, that the trial court acted properly and made such findings of fact as were necessary to support its judgment. *Morgan* v. *Stocks*, 197 Ark. 368, 122 S.W.2d 953 (1938).

I think it helpful to clearly state what was *not* before the trial court. It was not a dispute between two joint tenants competing for the funds of a joint account as was present in *Irvin* v. *Jones*,

310 Ark. 114, 832 S.W.2d 827 (1992). The case before the trial court involved the right of a judgment creditor of only one of two joint tenants to reach the joint funds by garnishment.

While there are different theories and views as to how the playing field should be arranged where the participants are so aligned, a discussion should be unnecessary because our Supreme Court has previously addressed the matter and adopted a set of rules. *See Hayden* v. *Gardner*, 238 Ark. 351, 381 S.W.2d 752 (1964). In *Hayden* the Supreme Court held that "all of the joint bank account was prima facie subject to garnishment" by a judgment creditor of one of the joint tenants, and "the burden was on each joint depositor to show what portion of the funds he or she actually owned." "Prima facie" simply means a fact presumed to be true unless disproved by evidence to the contrary. *Black's Law Dictionary* 1189 (6th ed. 1990), *see also Ragland* v. *Gulf Oil Corp.*, 288 Ark. 182, 185, 703 S.W.2d 449, 452 (1986) and *Country Pride* v. *Holly*, 3 Ark. App. 216, 219, 624 S.W.2d 443, 445 (1981). To paraphrase, the entire joint account is presumed to belong to the judgment debtor *for purposes of garnishment*, and the burden is on the joint tenants to prove to the contrary. In fact the funds may have derived wholly from the joint tenant who is not the judgment debtor, and there may never have been any intent by that joint tenant to make a gift of any portion of the funds to the judgment debtor, much less any delivery. However, the joint tenants have the burden of proving such.

Although the dissent would place the burden of proof on the garnishing creditor, this is not the law. Without the presumption that a joint account belongs to the judgment debtor for purposes of garnishment, the possibility of using joint accounts to frustrate and hinder the collection efforts of judgment creditors is obvious.

Here, we must assume that the trial court did not believe the testimony given by the joint tenants. *See Morgan* v. *Stocks*, *supra*. Consequently, appellant and the judgment debtor failed to meet their burden of proof to show that the funds represented by the two certificates of deposit did not belong to the judgment debtor.

For these reasons and those set forth in the prevailing opinion, the trial court's decision should be affirmed.

MELVIN MAYFIELD, Judge, dissenting. By a three to three vote, this court has affirmed the trial court's decision in this case. I cannot agree with the prevailing opinion because I think the decision appealed from is clearly contrary to the preponderance of the evidence, and our decision ignores the doctrine of *stare decisis* by refusing to follow the law as announced by the Arkansas Supreme Court.

The prevailing opinion allows two certificates of deposit purchased by a mother to be subjected to garnishment to pay a debt owed by the mother's daughter. Under the undisputed evidence, the mother, on the advise of an officer of the bank, had purchased these certificates in her name and the name of her daughter. Citing *Hayden* v. *Gardner*, 238 Ark. 351, 381 S.W.2d 752 (1964), the prevailing opinion in the instant case holds that the bank's obligation to the joint owners of the certificates was prima facie subject to garnishment. Then, in one giant leap, the opinion holds that because the bank's obligation was prima facie subject to garnishment "there is a presumption that the money is owned by the [daughter]."

I think this reasoning is flawed in two respects. First, what *Hayden* v. *Gardner* (which involved a joint bank account) actually said was that the joint bank account was prima facie subject to garnishment and "the burden was on each joint depositor to show what portion of the funds he or she actually owned." 238 Ark. at 354, 381 S.W.2d at 754. In the instant case the undisputed evidence is that the mother, Mrs. Glover, sold various items of personal property after her husband died and that she purchased several certificates of deposit with that money. Mrs. Glover has one son and two daughters. One of the daughters lives in Texas. Another daughter and the son live in Arkansas. The only testimony in the case came from the mother and the son and daughter who live in Arkansas. They testified that the mother wanted the proceeds from the certificates to go to her children in equal amounts upon her death, and she had added the children's names to the certificates, although not every certificate had the name of every child on it. While it is clear that the mother wanted the money represented by the certificates to go ultimately to the children, at the time of the hearing in this case, the testimony of the mother, son, and daughter agreed that the children had never withdrawn funds from, or exercised control over, any of the

certificates. The mother also said that she wanted "to take care of herself," and the son and daughter testified that they had never considered that the money represented by any of the certificates belonged to them. The trial court made no finding to the contrary, and although the prevailing opinion on appeal states that the mother and her son and daughter were interested witnesses, the opinion does not indicate that there is any reason to doubt that the money for the certificates came from the mother, or to think that the son or daughter had ever exercised any control over any of the certificates. Moreover, copies of the certificates are in evidence, and they show that the mother had endorsed them on one occasion to receive twelve months' interest. In sum, there is simply no reason not to believe the testimony of the mother, son, and daughter, and in this situation we have said:

> Under our established rules of law the trier of fact is not bound to accept the testimony of any witness even if uncontradicted and is the judge of the weight of the testimony and credibility of the witnesses. It does not, however, have the right to arbitrarily disregard the testimony of any witness and where the uncontradicted testimony of even an interested witness is unaffected by any conflicting inferences to be drawn from it, and is not improbable, extraordinary or surprising in its nature or there is no other ground for hesitating to accept it as truth, there is no reason for denying the finding of verity dictated by such evidence. *Knighton* v. *International Paper Co.,* 246 Ark. 523, 438 S.W.2d 721 (1969); *St. Louis-San Francisco Rwy. Co.* v. *Harmon,* 179 Ark. 248, 15 S.W.2d 310 (1929).

*McLarty Leasing System, Inc.* v. *Blackshear,* 11 Ark. App. 178, 182-83, 668 S.W.2d 53, 56 (1984).

Therefore, I think the reasoning in the prevailing opinion is flawed because it fails to recognize that the trial court's decision, which does not contain any finding of fact, is not supported by the evidence insofar as the decisive issue in this case is concerned. The issue here is not whether the mother intended her daughter to be entitled to the proceeds of the certificates of deposit upon the mother's death — the evidence clearly shows that this is true — but the issue here is whether the proceeds of the certificates are

subject to a present writ of garnishment to pay the daughter's debt. *Hayden* v. *Gardner, supra,* said that it was adopting a view, on the question of whether a joint account is garnishable, which held:

> that the joint account should be garnishable only in proportion to the debtor's ownership of the funds, as to which parol evidence is admissible to show the respective contributions of each depositor, as well as any intent of one to make a gift to the other.

238 Ark. at 353, 381 S.W.2d at 753. On that issue, in my view, the evidence in this case simply does not support the trial court's decision.

The prevailing opinion not only fails to recognize that the effect of the trial court's decision was to arbitrarily disregard the testimony as to the respective contributions to the purchase of the certificates of deposit involved, but the second flaw in the prevailing opinion is its failure to consider the question of whether the mother intended to make a gift of the certificates to the daughter. The reason given for this failure is that "the hospital [appellee] was not required to prove an *inter vivos* gift from Mrs. Glover [the mother] to Mrs. Maloy [the daughter]." I do not contend to the contrary, but one of the factors mentioned in *Hayden* v. *Gardner* to be considered in the determination of "what portion of the funds" was actually owned by the mother and the daughter is "any intent of one to make a gift to the other." In that regard, in the case of *Coristo* v. *Twin City Bank,* 257 Ark. 554, 520 S.W.2d 218 (1975), the court, quoting from a previous opinion, said:

> [I]n order to constitute such a completed gift, there must be an actual delivery of the subject matter of the gift to the donee with clear intent to make an immediate, present and final gift beyond recall, accompanied with an unconditional release of all future dominion and control by the donor over the property delivered.

257 Ark. at 561, 520 S.W.2d at 222. The brief filed by the appellee says "delivery of the gift took place in that on the face of said certificates of deposit it clearly states that either of the [parties named] on the certificates of deposit [was] eligible to

make application for and receive a drawdown of the proceeds of the certificates of deposit at any time."

In *Boling* v. *Gibson*, 266 Ark. 310, 583 S.W.2d 14 (1979), the court discussed the delivery requirement in regard to an *inter vivos* gift of certificates of deposit. The court held that certificates of deposit may be the subject of delivery with intent to make a gift as "we have said that a promissory note, or any other chose in action or any other evidence of debt, may be the subject of a gift *inter vivos* [and] a certificate of deposit falls into that category." 266 Ark. at 314, 584 S.W.2d at 16. The *Boling* case was cited in the recent case of *Irvin* v. *Jones*, 310 Ark. 114, 832 S.W.2d 827 (1992), as authority for the above statements of law and for the statement that "there can be no doubt that the requirements of intent and delivery apply to an *inter vivos* gift of a certificate of deposit." 310 Ark. at 118, 832 S.W.2d at 828. The certificates in question in *Irvin* v. *Jones*, were made payable to "appellee or each of the three appellants respectively." The appellants claimed the certificates were gifts *inter vivos*, but the trial court granted appellee's motion for summary judgment. Our supreme court affirmed stating:

> In the present case, appellee stated in her affidavit that she kept physical possession of the certificates in her safe deposit box at all times. Appellants admit that they never had possession of the certificates. Thus, appellants offered no proof of the element of delivery, which the foregoing case law, especially *Hudson* [v. Bradley, 176 Ark. 853, 4 S.W.2d 534 (1928)], establishes in an essential element of the claim of a valid gift *inter vivos*.

Thus, it is clear that actual delivery is required in order to make an *inter vivos* gift of a certificate of deposit, and it is clear that the fact that the certificates in the instant case were payable to either Mrs. Glover or Mrs. Maloy, or the survivor, is not, under the *Irvin* v. *Jones* decision, and the cases cited therein, sufficient to constitute delivery. The truth of the matter is that there is no evidence to show delivery of the certificates by the mother to the daughter; therefore, the second factor mentioned in *Hayden* v. *Gardner* as evidence to show the debtor's ownership of joint funds is missing from this case.

Moreover, in my view, the refusal of the prevailing opinion of

this court to reverse the trial court has more significance than the resolution of this one case. The Arkansas Supreme Court noted in *Jones* v. *Robinson*, 297 Ark. 580, 582, 764 S.W.2d 610, 611 (1989), that "a survivorship deposit is closely akin to a will." And it was noted in the second *Gibson* v. *Boling* case, *see* 274 Ark. 53, 59, 622 S.W.2d 180, 184 (1981), that designating certificates of deposit to be held in joint tenancy with right of survivorship "is commonly referred to as a will substitute." Thus, I think this court should be careful to follow precedent in this case — indeed, in all cases.

> In fact, under the doctrine of *state decisis*, an appellate court will usually follow its prior decisions unless substantial considerations dictate a different result, while a subordinate court (for example, a trial court or an intermediate appellate court) is expected to follow the decisions of courts to which it is subordinate.

Marjorie D. Rombauer, *Legal Problem Solving* 5 (1978). Also, our supreme court has noted that there "ought to be reckonability in the law," *Warren* v. *Warren*, 273 Ark. 528, 533, 623 S.W.2d 813, 816 (1981), and that "precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Parish* v. *Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968).

So, because the creation of a joint tenancy with right of survivorship is commonly employed — not to transfer present ownership, but ownership for the survivor — I believe we should follow the law announced in *Hayden* v. *Gardner*, and reaffirmed in *Irvin* v. *Jones*. The rationale of the prevailing opinion seems to be found in the statement that, "Mrs. Glover's testimony that she intended to put the money beyond the reach of her own creditors supports the trial judge's decision." I think that statement clearly ignores the evidence and the law established by precedent. There is no reason to doubt that Mrs. Glover furnished the money to buy the certificates. If she did, the only reason that the proceeds of the certificates could be subjected to garnishment for the payment of the daughter's debt is that the mother made an *inter vivos* gift of the certificates to the daughter. This is an appeal from circuit court, but even in chancery court the clean hands doctrine would not have sustained the writ of garnishment. *See McCune* v.

*Brown*, 8 Ark. App. 51, 648 S.W.2d 811 (1983). And the fact that the certificates provided that upon presentation of the certificates the bank would pay the proceeds to either the mother or daughter does not mean that there had been a *inter vivos* gift to the daughter. *Irvin* v. *Jones* specifically held to the contrary. Therefore, even if the mother had *intended* to make such a gift, under the law of the cases previously decided by the Arkansas Supreme Court there *had to be a delivery* in order to constitute such a gift, and the evidence in this case clearly shows there was no such delivery. In *Irvin* v. *Jones* our supreme court also pointed out that the requirement of delivery was established almost one hundred years ago. I know of no reason for this court to attempt to change that law, and the prevailing opinion states no reason for such change.

I have not overlooked the concurring opinion in this case and want to add a few words to eliminate any confusion it may cause. It is certainly true, and my dissent agrees, that this case is not "a dispute between two joint tenants competing for the funds of a joint account as was present in *Irvin* v. *Jones*." But in *Hayden* v. *Gardner* the Arkansas Supreme Court pointed out three different rules used by other jurisdictions to determine whether joint accounts are even subject to garnishment. One view, the court said, holds that a joint account is immune from garnishment. Another view is that the entire account is subject to garnishment to pay the debt of either of the joint account owners. And the third view, adopted by our supreme court, is:

> that the joint account should be garnishable only in proportion to the debtor's ownership of the funds, as to which parol evidence is admissible to show the respective contributions of each depositor, as well as any intent of one to make a gift to the other.

238 Ark. at 353, 381 S.W.2d at 753.

Neither the original nor the concurring opinion in this case attempts to explain how the trial court could believe that the certificates of deposit in this case were purchased by contributions made by the daughter. It is suggested by the concurring opinion that "we must assume that the trial court did not believe the testimony given by the joint tenants." However, the judge had to believe something, and my point is that he could not believe the

daughter made any contribution to the purchase of the certificates except by arbitrarily disregarding the testimony given by the mother, son, and daughter in this case. That, according to my cited case of *McLarty Leasing System, Inc.* v. *Blackshear*, is something the court is not allowed to do, and a decision reached on that basis is clearly contrary to the preponderance of the evidence.

The concurring opinion even suggests that the funds for the certificates may have been derived wholly from the *daughter* and that my view would leave the possibility of using joint accounts to frustrate and hinder the collection efforts of judgment creditors. It is interesting that the concurring opinion proceeds on a different tack from that of the prevailing opinion which states that the mother's testimony that she intended to put the money beyond the reach of the *mother's* creditors "supports the trial judge's decision." But, in any event, the record shows that the certificates were purchased in September of 1989, and the judgment against the daughter was granted June 8, 1990, on a complaint filed May 14, 1990. Thus, there is nothing in the record to suggest or support any theory that the certificates were purchased by contributions made by the daughter, and taken in both names to frustrate and hinder the collection of the hospital's judgment.

Therefore, the next inquiry that *Hayden* v. *Gardner* says we should consider is whether there was an intent of the mother to make a gift of the certificates to the daughter. And as I have already pointed out, even if there had been such an intent, the record contains no evidence of delivery of the certificates as in required by the cases in Arkansas — the latest one being *Irvin* v. *Jones*. Under the law and the evidence in this case the burden of showing that the certificates belong to the mother has been met.

Therefore, with all due respect, I dissent from the prevailing opinion, and because that opinion fails to follow the long-established law as announced by the Arkansas Supreme Court, I think the opinion would be reversed if a petition for review by that court is filed under the provisions of Arkansas Supreme Court and Court of Appeals Rule 29(5) (as of May 1, 1993, Rule 1-2 (f) and Rule 2-4).

ROGERS and COOPER, JJ., join in this dissent.