Cite as 2021 Ark. App. 82

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-148

| | |
|---|---|
| | **Opinion Delivered:** February 24, 2021 |
| MARY JANE WILSON<br><br>APPELLANT<br><br>V.<br><br>BOBBY J. HATTON,<br>ADMINISTRATOR OF THE ESTATE<br>OF SELDON GIBBS, DECEASED<br>APPELLEE | APPEAL FROM THE GARLAND<br>COUNTY CIRCUIT COURT<br>[NO. 26CV-18-559]<br><br>HONORABLE LYNN WILLIAMS,<br>JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Mary Jane Wilson appeals from the Garland County Circuit Court's grant of summary judgment to appellee Bobby J. Hatton, administrator of the estate of Seldon Gibbs, on his action to cancel a deed. The trial court found that there had been no delivery of the deed from Gibbs to Wilson and, thus, no gift. Wilson argues that the trial court erred in granting summary judgment because delivery was not required given that Gibbs retained an interest in the property. We affirm.

## I. *Background*

Seldon Gibbs had three children: Wilson and two sons. Gibbs executed three wills—one in 1993, one in 2007, and one in 2010—leaving his estate equally to his three children. On September 12, 2011, Gibbs signed a warranty deed prepared by his attorney granting two tracts of land and his residence in Garland County to himself and Wilson as joint tenants

with right of survivorship. On June 16, 2015, Wilson recorded the deed. Gibbs died on July 20, 2015, and his 2010 will was admitted to probate. In April 2018, Hatton filed an action against Wilson to cancel the deed.

On August 30, 2019, Hatton moved for summary judgment on the basis that there had been no gift of real estate because Gibbs did not deliver the deed to Wilson. Hatton attached the following documents to the motion: the deed; a June 2015 letter from a Louisiana lawyer to Wilson regarding Gibbs's decline in mental state and the need to protect his assets; bank records; a power of attorney (POA) dated May 5, 2015, signed by Gibbs in favor of Wilson; Gibbs's three wills described above; and a 2014 revocation of an earlier POA in favor of Wilson.

Wilson filed a response to Hatton's motion, arguing, in part, that different rules apply with respect to delivery when the grantor retains an interest in the property. She attached her affidavit in which she attested that there had been a continuing conflict between Gibbs and her brothers dating back to the 1970 divorce of their parents; that she had since apologized to Gibbs for siding with her mother and enjoyed a close relationship with Gibbs since about 1991; that her brothers remained estranged from Gibbs; that Gibbs had been able to take care of his affairs until 2014 when his physical and mental health began to deteriorate; that she became Gibbs's caretaker and made many trips to Hot Springs from her home in Louisiana to care for Gibbs; that Gibbs moved to Louisiana in the spring of 2015; that Gibbs had discussed with her his wishes regarding his money and real estate and had shown her his past wills; that Gibbs had told her that he intended to give her the Garland County real estate, which she understood to be a lifetime gift and not part of her inheritance;

2

that in June 2015, Gibbs was living in a nursing home near her when she traveled back to Hot Springs alone to clean Gibbs's house; that she found the deed on Gibbs's bedroom floor among various items, including trash; and that, considering Gibbs's poor health and his stated intention with respect to the property, she took the deed to the courthouse and recorded it. In addition to the affidavit, Wilson attached a nine-page handwritten letter that Gibbs had sent to his sons in 2004 and three photographs depicting the state of disarray inside Gibbs's home when Wilson found the deed.

In reply to Wilson's response, Hatton argued that there had been no delivery of the deed because Wilson was not aware of the deed's existence until she discovered it under trash and because Gibbs was not aware that Wilson had found and recorded the deed. Hatton attached three excerpts from Wilson's oral deposition taken on April 10, 2019, in which Wilson said that she considered the deed an inter vivos gift from Gibbs, that Gibbs had not told her about the deed before she found it, and that she had not spoken with Gibbs about the existence of the deed or the fact that she had found and recorded it.

In its order granting summary judgment, the trial court noted that Gibbs had kept the 2011 deed in his possession until June 2015 when Wilson found it and that Wilson had taken the deed from Gibbs's home and recorded it without Gibbs's knowledge. The trial court concluded that there had been no gift given that Gibbs had not delivered the deed to Wilson. The trial court thus canceled the deed. Wilson filed this appeal.

## II. *Standard of Review*

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter

3

of law. *Ginsburg v. Ginsburg*, 353 Ark. 816, 120 S.W.3d 567 (2003). The purpose of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Id*. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id*.

A valid inter vivos gift is effective when the following elements are proved by clear and convincing evidence: (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *Fletcher v. Fletcher*, 2011 Ark. App. 89, 381 S.W.3d 129. The parties appear to agree that the only element at issue is delivery.

Generally, in order to establish delivery, it must be shown that the grantor relinquished his dominion and control over the instrument. *Grimmett v. Estate of Beasley*, 29 Ark. App. 88, 777 S.W.2d 588 (1989). Different rules apply, however, where the grantor reserves a life estate or creates a joint tenancy in himself and another person. *Id*.; *Burmeister v. Richman*, 78 Ark. App. 1, 76 S.W.3d 912 (2002). There is no longer a requirement that it must be shown that the instrument has passed beyond the grantor's control and dominion.

4

*Grimmett, supra.* The fact that the deed is found among the effects of the grantor at his death raises no presumption against delivery when a life estate is reserved, *see Johnson v. Young Men's Building & Loan Ass'n*, 187 Ark. 430, 60 S.W.2d 925 (1933), and under these circumstances the grantor's retention of possession and control over the property conveyed and his failure to record the deed are not inconsistent with delivery. *Cribbs v. Walker*, 74 Ark. 104, 85 S.W. 244 (1905). Moreover, the rule with respect to delivery of gifts is less strictly applied to transactions between family members.[1] *Bellis v. Bellis*, 75 Ark. App. 213, 56 S.W.3d 396 (2001). Nevertheless, delivery must occur for a gift to be effective. *Peterson v. Peck*, 2013 Ark. App. 666, 430 S.W.3d 797.

### III. *Discussion*

Wilson argues that a hand-to-hand delivery of the deed was not required because Gibbs retained a one-half interest in the property. This is correct, although the trial court did not specifically point this out in its order granting summary judgment to Hatton. Wilson and Hatton rely on many of the same cases. In *Higgins v. Thornton*, 2017 Ark. App. 258, 520 S.W.3d 302, a case cited by neither Wilson nor Hatton, this court affirmed a summary judgment setting aside a deed that had not been delivered to the grantee during the grantor's lifetime. In *Higgins*, after Burnett died in 2001, a 1990 deed was discovered giving 240 acres to her daughter, Higgins, and her granddaughter, Heffner, as cotenants with a reserved life estate in Burnett. Thornton, as executor of Burnett's estate, sought to set aside the deed on

---

[1]Wilson relies, in part, on the rule that the law presumes a gift when legal title is registered in a family member's name. *Perrin v. Perrin*, 9 Ark. App. 170, 656 S.W.2d 245 (1983). Here, however, Wilson recorded the deed herself and without Gibbs's knowledge, so the presumption does not arise.

the basis that it had not been delivered to Higgins and Heffner prior to Burnett's death. Testimony revealed that, after Burnett's death, Higgins had found the deed in an ammunition box belonging to her father and recorded it in 2009.

Higgins relied on many of the same cases that Wilson relies on. This court distinguished those cases on the basis that the grantee in each case had been made aware of the deed at issue by the grantor. In *Grimmett*, Beasley had shown an original deed conveying a farm to her brother and his wife, but she took the deed with her when she left their home. In *Cribbs*, a husband had shown a deed reserving a life estate to his wife and then placed the deed in his safe, where it remained until his death. In *Johnson*, a husband and wife conveyed their hotel property to their seventeen-year-old son but kept the deed in a hotel safe and continued to manage the hotel. The son had been told about the deed and had access to the safe. Higgins also relied on *Barker v. Nelson*, 306 Ark. 204, 812 S.W.2d 477 (1991), in which a father had passed the original deed around a table to show to his sons.

In holding that there had been no delivery of the deed in *Higgins*, we said that Higgins presented no proof she had been shown the deed by Burnett or knew of its existence. While Higgins's attorney argued at a hearing that Higgins and Heffner had gone to the lawyer's office with Burnett when the deed was prepared and that Higgins herself had placed the deed in the ammunition box, Higgins offered no affidavit to that effect.

The *Higgins* court compared the facts in that case to those in *Van Huss v. Wooten*, 208 Ark. 332, 186 S.W.2d 174 (1945), in which the supreme court held that there had been no delivery of a deed from John M. Van Huss granting a small farm to his nephew, J.D. Van Huss. After John's death, J.D. and other relatives found the deed in a suitcase belonging

6

to John, and J.D. recorded it. There was no indication that J.D. had access to this suitcase while John was alive. Although J.D. testified that John had told him on his deathbed about the deed, that testimony was contradicted by a lawyer who testified that J.D. had told him he did not know of the existence of the deed until after John's death.

According to Wilson's own affidavit and subsequent deposition, Gibbs did not make her aware of the deed even though they had a close relationship up until his death. Gibbs had shown Wilson his various wills, but he had not shown her, or told her about, the deed. Further, Gibbs kept the deed in his possession until it was discovered by Wilson. Wilson admitted that she had not told Gibbs that she found and recorded the deed. Although Wilson knew of the deed's existence *prior* to Gibbs's death, it was not because of any affirmative action on the part of Gibbs.[2] Wilson contends that Gibbs repeatedly told her of his intentions with respect to his property. Intention to give, by itself, is not sufficient; there must be a delivery to consummate the gift and to pass title. *Chalmers v. Chalmers*, 327 Ark. 141, 937 S.W.3d 171 (1997). Under this set of facts, we cannot say that the trial court erred in ruling that there had been no delivery of the deed to Wilson.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Legacy Law Group*, by: *Bryan Jay Reis*, for appellant.

*Richard F. Hatfield, P.A.*, by: *Richard F. Hatfield*, for appellee.

---

[2]Wilson raises no argument on appeal about her authority pursuant to the May 2015 POA.